Okay, our final argument this morning is Hubbard v. Nestor 19-1399 and for the appellant is Alex Pass. You may proceed. Good morning and may it please the court. My name is Alex Pass appearing today on behalf of defendant appellants Tom Nestor, Michael Yall, Wade Adams, Derek Mattson, and Cole Britton. To truly understand this matter, one has to begin in August of 2013 when plaintiff pled guilty to felony first-degree criminal trespass dwelling in Adams County District Court. Plaintiff was sentenced to two years detention in the Department of Corrections to be followed by two years of parole on November 19, 2013. While serving his initial sentence at the DOC facility in Lyman, Colorado, plaintiff received a new charge of introduction of contraband in first degree dangerous instrument for possessing and or creating a weapon similar to an ice pick from a sharpened toothbrush. When plaintiff completed his initial two-year sentence of incarceration, he was paroled to the Lincoln County Jail to address a new charge acquired for possessing a weapon at the Lyman Correctional Facility. Plaintiff had two years of parole remaining on his sentence and therefore was incarcerated in Lincoln County Jail as both a pretrial detainee and a sentenced inmate. While incarcerated in the Lincoln County Jail, Appelli argued and yelled at other inmates and jail staff. He was involved in at least one physical altercation in which he punched another inmate in the head and face and he was discovered to be in possession of dangerous contraband and other disallowed items including tape and resembling a shank. Let me ask you a question about your dual status position. Which is reading cases, Hamilton being one, they're different than this one in this regard. The defendant is serves the prison time, goes out, is actually on parole, commits a crime and is put back in for the parole violation and awaiting charges on the first case. But this one, the defendant as you say goes from Lyman to Lincoln County immediately. Correct. I don't I don't know if the defendant is serving parole at that time. Is his two-year parole going clicking off day by day or is his parole not even going to begin running until he's actually released from confinement? So it was our understanding that his parole began, his two years of parole began and he was there for a sentenced inmate because in Colorado, at least under Colorado law, an inmate on parole. I don't believe the parole was suspended during his time of incarceration. He the documentation and the record reflects that he was paroled to the Lincoln County Jail. Let me follow that question up to counsel. I don't see where you made that objection at all to the magistrate's report. Your honor, actually the magistrate judge did not raise that in his briefing except for in one footnote and we addressed the magistrate's objections to what he actually raised in his report, in his recommendation. That that answer is not clear to me, counsel. You better try again. I'm sorry, your honor. I don't understand what's not clear. I say I don't understand because I'm looking at it and I don't see where that where you ever made an object, you know, objection to that, your honor. I guess I would say that we objected to what he actually put in his recommendation. Uh, he didn't address the parolee argument in his recommendation in the body of his recommendation. The magistrate judge did not address that argument, but it is in the footnote, right? It is. It is included in one footnote, although he limits the argument to what defendants thought about his parolee status rather than actual, the actual parolee status, the dual status. So he limits it to what he actually, uh, what inference that or what mindset that may have had, uh, defendants may have had about his parolee status and the dangerous, um, attitude of plaintiff rather than his actual dual status in Lincoln County jail. Thank you. Before we leave this, do you have any cases like the one that you, any cases that involve the same sort of facts as this one, which is to say the defendant is never serving on parole outside of confinement, is not reincarcerated for a parole violation. And yet the court says that's still dual status. Your honor, I don't believe there are any cases. I was unable to find any of the cases, which tends to lead that it's not clearly established. Uh, and I'll get to that argument as well, that it was not clearly established, um, that defendants conduct, um, was violated by the statutory constitutional rights. And I will get to that argument as well. Um, but I guess when addressing, uh, defendants motion for summary judgment, the district court found that plaintiff was involved in multiple verbal disputes with other inmates, largely involving the television programming. Uh, he was involved in at least one physical altercation, and on several occasions he was accused by jail staff of having contraband in his cell. Uh, the district court found that those facts were undisputed and unlike other motions for summary judgment, where the moving party carries the burden of proof to demonstrate that there are no genuine issues of material fact when a affirmative defense of qualified immunity, the burden then shifts to the plaintiff to establish that defendants are not entitled to qualified immunity. Uh, despite the law, we have a rule that if the district court concludes that there's a back question, um, that's not that's not review. Reviewable on appeal. I do understand that, Your Honor. Um, and that is, excuse me. How do we get around that here, Your Honor? That is true. And in most cases, facts are not reviewable on appeal. But in this case, and it's contained in our briefing, there are blatant contradictions in the record. Uh, and in fact, plaintiff did not cite any any citations to the record in his initial briefing and was given another opportunity to do so. And when he did make citations to the record, his citations do not. In fact, they support many of defendant appellants positions rather than his own positions. Um, and the ones that are, uh, the denials he made to defendant statement of facts are blatantly contradicted in the record. He says he denies the statement of fact that, uh, he possessed any contraband, uh, in the Lincoln County jail. And when you look to a citation, it simply states that, Oh, I was allowed to have these things when it's clearly indicative in the depositions and the record on Lincoln County jail policies that he was, in fact, not allowed to have items such as paper and tape wrapped around pens and pencils. Uh, similar to the charge that he received the O. C. Uh, I would argue that, uh, there's plaintiff's statement of facts are blatantly contradicted in the record. Uh, and in that case need a full review by this court before we leave the dual status. Yes. You're the one asserting dual status. Yes, we are the ones asserting unless we agree with you on dual status. And then the whole parolee things out the window. He's only being held as a pretrial detainee. And if that's the case, you concede that your appeal is not valid, which is not you lose. Because what? Did you get a hearing? He did not, Your Honor. Then how is it not the end for you if we ruled against you on dual status? Because I don't believe that law was clearly established either way, Your Honor. Um, if if you would allow me to get to that argument, the clearly established on the pretrial detainee. Yes, Your Honor. Okay. Black man is not good enough for a bell. I don't believe so, Your Honor. It's our position that those do not meet the test for clearly established, uh, in the 10th Circuit. Okay, I understand your position now. Thank you. Um, so qualified immunity having been claimed, the plaintiff carries a two part burden to show that the defendant's actions violated a federal or constitutional statutory right. And if so, to that, the right was clearly established. As you had just stated, um, throughout this process, contrary to the law, plaintiff is incorrectly maintained that defendants failed to establish that their entitlement to qualified immunity. Uh, however, once defendants raised the issue, the burden then shifts to the plaintiff or should have been shifted to the plaintiff to establish that defendants are not entitled to qualified immunity and plaintiff did not meet his burden. Um, the the clearly established standard, uh, means that the defendant's conduct, uh, was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. Existing law, uh, must have placed the constitutionality of the officer's conduct beyond debate. As this court is the president must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. And that was not the case in this matter. Um, the circumstance, the standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rules contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. Plaintiff provided no 10th Circuit or United States Supreme Court case law on point. And I don't believe any exists tending to show the defendant's actions holding plaintiff in his own cell or in a holding cell for a limited period of time while they decided where to house him safely or moving plaintiff to another general housing pot that he actually requested to be housed in prior to them moving there violated one plaintiff's statutory constitutional rights. Uh, plaintiff relied on two cases, as you said, one of them being Bell v. Wolfish and one of them being Blackman v. Sutton. Uh, in Bell v. Wolfish, inmates brought a class action challenging the constitutionality of their confinement conditions and practices in a federally operated facility in New York. Um, the plaintiffs and Bell charged that they had been deprived of their statutory and undue length of confinement, improper searches, inadequate recreational, educational and employment opportunities, insufficient staff and objectionable restrictions on the purchase and receipt of personal items and books challenging the conditions of their confinement, as is the case in this matter. Um, the plaintiff's alleged that double bunking or housing two inmates in a single occupancy cell, uh, deprived the detainees of their liberty without due process of law and contravention of the Fifth Amendment. Um, this case, upon which plaintiff relied in no way clearly established that defendants were precluded from locking plaintiff in a cell temporarily, very temporarily or moving plaintiff to another general housing pod where he requested to be housed when he created unsafe conditions in the jail, uh, violate clearly established law. And those absolutely are not comparable cases on do not clearly establish that defendants conduct, um, violated plaintiff's rights in Blackman. The plaintiff's primary complaint, uh, was the hours he spent shackled to a prostrate restraint chair as an 11 year old boy, um, sub £100 11 year old boy. Um, and, uh, the record of Blackman suggested, uh, to this court that the restraint chair was sometimes used as plaintiff was on occasion shackled to restraint chair for hours without any legitimate penological interest. Uh, in this case, plaintiff did not even allege similar facts that defendants actions were done without any penological interest. Um, your argument here, um, there's there's no evidence of intent or that there's no evidence of punishment. Your Honor, honestly, it's both. So there was no evidence of intent in the record. Um, accurately reflects. I think that that the sole intent the magistrate judge relied upon in the district court later affirmed was the plaintiff's subjective opinions that he was being punished. There is no other, uh, evidence in the record stating that, you know, there was in any indication that he was being punished. Um, and your honor, I do see that I have only one minute, but I would argue that there's no clearly established law. Uh, black men, they're so factually and legally dissimilar. Um, that I would say the law was not clearly established. And your honor, at this time, I'd like to reserve one minute for rebuttal. Thank you, counsel. Let's hear from Miss Moore. Good morning, your honors. May it please the court. Mr Hubbard. Mr Hubbard believes that this court and this appeal, this court black. I apologize. Mr Hubbard believes that this appeal exceeds this court's limited jurisdiction on to hear interlocutory appeals based on qualified immunity. And it is Mr Hubbard's position that these jurisdictional issues need to be addressed before we move on to the merits of the officer's appeal. Unless this court has any questions regards to the blatant contradiction issue, Mr Hubbard will rest on his briefings on that issue and move on to the firm waiver rules application. In this case, the firm waiver rule in this case does bar the appeal as it applies to the parolee argument. As this panel has realized, the officers have not raised an objection to the magistrate's recommendation with regards to the parolee argument. Contrary to what this panel just recently heard on pages 402414 and 388 specifically, the magistrate judge spoke about the parolee argument and specifically the court understands defendants to raise plaintiff's parolee status as a factor relevant to the determination of whether defendants' actions were incident to a legitimate government purpose. The court finds it unnecessary to consider this argument. The magistrate judge found that because when you look at the recommendation, the magistrate judge found that Mr Hubbard met his burden to show that there was sufficient evidence for a jury to find intent to punish. The law under Bell is that you must show either an intent to punish and if you don't have enough to show an intent to punish, then there is a legitimate government interest that could be looked at. Because the magistrate found that there was sufficient evidence for an intent to punish, there was no need to go into that second issue of whether or not the officers here had a legitimate government purpose in placing Mr Hubbard in segregation. So without having to their understanding of the parolee argument that they did not need to reach that issue. The officers chose not to raise an objection to that in order to give the district court an opportunity to review, consider the parolee argument and then make a finding. By choosing not to do that, the officers have waived any appeal regarding the parolee argument. The officers have not provided this to the firm waiver rule. Specifically here, the exception that would apply would be the interest of justice. The officers in their briefings before this court have chose to not properly argue that the interest of justice exception applies. Rather, only once raised by Mr Hubbard that this appeal is barred by the firm waiver rule. Do the did the officers then respond and say it is not without actually explaining why the interest of the interest of justice exception actually applies? Was it enough of an objection to the magistrate's order to object that he had switched the burden of proof that by saying I'm not going to address this because I haven't been given enough information. The issue is beforehand. And at that point, why isn't it your burden? Since we're talking about qualified immunity to deal with that issue, it is not sufficient in Mr Hubbard's opinion that the defend that the officers just raised that general objection. The reason being is the officers are looking at the magistrate's recommendation in shifting this burden only because the officers don't believe that there's sufficient evidence that there was an intent to punish. That brings in the facts to this appeal, which, as your honors have already realized, is exceeding this court's jurisdiction unless a blatant contradiction is found. But the recommendation found that there was an intent to punish. When you look at the summary judgment briefing to in the lower court, the officers essentially just moved past the intent to punish peace. They don't believe that there is sufficient evidence for a jury to find that there is an intent to peace. Was there legitimate government interest here? Well, if it's a dual status, is that a problem that there was an intent to punish? No, your honor. The reason being, while there hasn't while we have not been able to find a specific case on point, as this panel has pointed out, the cases that do exist provide enough analogous to enough of an analogy for this case. Mr Hubbard was paroled. He would have been released, as most parolees are, into the world if it wasn't for this pending charge in Lincoln County that he received while he was serving another sentence on an unrelated matter. So rather than being paroled and released in the world, he was transferred to Lincoln County as a pretrial detainee to serve for that to wait adjudication on that charge. Do you know whether the record shows whether the time that he was spending in Lincoln County was being credited toward his two years of parole? I don't believe we provided that information during our summary judgment briefing, but I will represent to this court that he was receiving his parole time while being in Lincoln County's position, um, custody. So is he dual status then? He is dual status to the extent that he was serving a term of parole while also being a pretrial detainee. But it is Mr Hubbard's position that the parolee status should not impact how he is treated in his status in the Lincoln County Jail because, as the case law shows, Mr Hubbard was not a parolee that was released and then was arrested either for a potential parole violation or receiving a new charge once he was out on parole. So parolees who have not been revoked are different from parolees who have been revoked for dual status purposes? Yes, Your Honor. There is case law out there that went back and forth. Hamilton, Hamilton being one of those cases that looked at if a parole violator or a probation violator is brought back into the custody, which status actually applies? Are they considered a convicted inmate and therefore an Eighth Amendment status applies? Or are they considered a parolee? The difference there being several circuits, including this one, has found that a detainee status does still apply to a parolee that is awaiting revocation of his parole if he is still in custody. And so it is Mr Hubbard's position that if a parolee awaiting for parole revocation that is in custody is considered a detainee, that Mr Hubbard, who was just serving his parole and has zero allegations against him for potentially violating the terms of his parole, should certainly be a detainee. Because again, Mr Hubbard had bail set for his pending charge in Lincoln County. And had he been able to post that bail, he would have been released from their custody because he was not there with regards to his parolee status. And for the officers to consider that his parolee status therefore implies that they can treat him as a convicted inmate is erroneous. It would not make sense that you can consider every single person's prior bad acts in prior convictions. That does not seem to align with what Bell v. Woolfish said. Bell v. Woolfish says anyone that is a detainee cannot be punished specifically with regards to that pending charge. And it seems pretty clear on the record based on the officer's affidavit that the conduct taken against Mr Hubbard was in direct relation to his pending charge. As this court has already heard, the contraband found, which has never been raised before until the reply brief to this court, that the pens and pencils that Mr Hubbard had in his possession for drawing and writing all of a sudden resembled a shank. And that that was the reason for their punishment against him. That was never previously raised to the lower court. And it was not in any of the briefings before this court until the reply brief. So it is policy and should not be considered if this court decides that it is going to look at the legal question before it and not apply the firm waiver rule. Um, if this court does not have any other questions, Mr Hubbard can rest on his briefings. All right, Council. Thank you for the concession. Mr Past, you have some rebuttal time. All right. Should I wait for the clock to come up or there you go. I'm gonna try to be quick. Uh, initially, I'd like to say that the pens and pencils wrapped in paper and tape was erased was raised on a factual matter in our motion for summary judgment. It's cited in there. Um, the parolee status. I would like to say conditional release on parole operates as an extension of a person's confinement intended to facilitate facilitate reintegration with society as opposed to an unconditional release accompanied by full restoration of that person's civil rights. A an inmate on parole does not receive full restoration of his civil rights. Second or third. And I think the most important factor here is that the magistrate judge did place the burden on defendants to establish that they were entitled to and then finally, she plaintiff's counsel keeps relying on an intent to punish. But it's not just an intent to punish. It's an expressed intent to punish. And the case law is very clear that that intent to punish must be expressed. It's not relied upon plaintiff's subjective belief that he is being punished and defendants will rest. Thank you, Council. Your time is expired. The you will be excused. The case will be submitted.